AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States District Court
Southern District of Texas
FILED

MAR 3 0 2021

Nathan Ochsner, Clerk

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Eulalio RODRIGUEZ, YOB: 1976 | ) | Case No. 7:21 mj 677-1 |
| Arturo TREJO, YOB: 1971 | ) | 2 |
| Gumercindo Vasquez-GUERRERO, YOB: 1949 | ) | 3 |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

**SEALED**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __08/12/2020 to 02/12/2021__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. §§ 846, 841(a)(1) | Conspiracy to Possess with Intent To Distribute a Controlled Substance. |

This criminal complaint is based on these facts:

See Attachment "A"

☑ Continued on the attached sheet.

Approved:
Robert Wells, 1- AUSA
3/30/2021

_____
*Complainant's signature*

Allison Yungclas / FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/30/2021 @ 3:40 pm

_____
*Judge's signature*

City and state: __McAllen, Texas__   J. Scott Hacker, United States Magistrate Judge
*Printed name and title*

ATTACHMENT "A"

On or about August 5, 2020, United States District Judge, Randy Crane signed an order authoring the continued interception of wire and electronic communications on a cell phone being used by Antonio Delgado, Sr. On or about August 12, 2020, FBI agents intercepted a communication indicating that Antonio Delgado, Sr. would be traveling with Eulalio M. Rodriguez to Laredo, Texas. In this investigation, agents have determined that Antonio Delgado, Sr. is an undocumented alien with no status to be in the United States. FBI agents also learned that Eulalio M. Rodriguez is a United States Border Patrol (USBP) agent assigned to USBP Station, Zapata, Texas and resides in Zapata and Harlingen, Texas. Title III wire intercepts indicated Rodriguez would accompany Delgado to an office of an attorney to address Delgado's criminal history to help Delgado obtain legal status in the United States.

On January 20, 2021, Individual "A" met RODRIGUEZ at a public parking lot in Harlingen, TX. RODRIGUEZ arrived in civilian clothes driving his personal vehicle. RODRIGUEZ exited his vehicle and entered Individual "A" s vehicle. During this meeting, RODRIGUEZ stated that the female RODRIGUEZ mentioned at the prior meeting was willing to transport the illegal narcotics for Individual "A" at $2,000 USD per kilogram verses the previously offered price of $1,000 USD per kilogram. Individual "A" declined due to the high price. Individual "A" also informed RODRIGUEZ that the kilograms of cocaine and methamphetamine would be concealed inside an ice chest in order to prevent detection by law enforcement.

On January 25, 2021, RODRIGUEZ contacted Individual "A", stated that the female changed her mind, and was willing to transport the narcotics at $1,000 USD per kilogram.

On February 9, 2021, a text message was sent from Individual "A" to RODRIGUEZ. Individual "A" revealed that RODRIGUEZ would coordinate the distribution of the 20 kilograms of cocaine and methamphetamine by providing a driver. RODRIGUEZ coordinated the introduction between Individual "A" and FNU LNU. Cellular telephone contact was made between Individual "A" and FNU LNU (later identified as Arturo TREJO) on cellular telephone number (xxx) xxx-1968. TREJO informed Individual "A" that TREJO would assist with the transportation of the narcotics. Cellular telephone contact was made between RODRIGUEZ and Individual "A". RODRIGUEZ instructed Individual "A" not to pay TREJO but instead was to pay RODRGUEZ the following day.

On February 10, 2021, telephone contact was made between Individual "A" and TREJO. Individual "A" asked TREJO what kind of vehicle he would be driving due to the size of the ice chest? Individual "A" provided a description of the ice chest and explained that the illegal narcotics were concealed within. TREJO assured Individual "A" that the transportation of the ice chest would not be a problem.

On February 11, 2021, telephone contact was made between Individual "A" and TREJO. Individual "A" advised TREJO that Individual "A" was waiting at the public parking lot in Harlingen, TX. TREJO advised Individual "A" to contact TREJO's driver, who was waiting

nearby, and provided Individual "A" with phone number, (xxx) xxx-6491. Individual "A" then contacted RODRIGUEZ via cellular telephone and explained that TREJO had changed the plan and was sending someone else to transport the illegal narcotics. RODRIGUEZ assured Individual "A" that it was "ok", and that Individual "A" could trust the driver. Individual "A" thereafter contacted TREJO's driver (later identified as Gumercindo Vasquez GUERRERO) by cellular telephone number, (xxx) xxx-6491 and provided a description of his vehicle. Vasquez GUERRERO described his vehicle as a silver GMC Terrain. Both Individual "A" and Vasquez GUERRERO met at an agreed location. Thereafter, the ice chest was loaded into silver GMC Terrain. Vasquez GUERRERO confirmed having knowledge of the concealed illegal narcotics by calling the items that were concealed inside the ice chest as "cuadros". Vasquez GUERRERO then followed Individual "A" to a location north of Edinburg, Texas. Cellular telephone contact was later made between Individual "A" and GUERRERO during the transportation. Individual "A" asked Vasquez GUERRERO, "if everything was ok due to the weather?" GUERRERO confirmed that he was following Individual "A" and that everything was "ok". Prior to the arrival of both parties at the agreed meet location, cellular telephone contact was made between Individual "A" and Vasquez-GUERRERO. Individual "A" and Vasquez-GUERRERO discussed the presence of law enforcement at the agreed meet location. Vasquez GUERRERO and Individual "A" stopped at a business north of Edinburg, TX. Vasquez GUERRERO advised that stopping at the same business was too suspicious and to continue to the original location. On arrival, the ice chest containing illegal narcotics was delivered to the Undercover Officer by Vasquez GUERRERO. Vasquez GUERRERO then asked for payment for transporting the illegal narcotics that were concealed inside the ice chest. Individual "A" explained that payment would be delivered to RODRIGUEZ only. Cellular telephone contact was again made between Individual "A" and TREJO. Individual "A" advised TREJO that Vasquez GUERRERO was expecting payment from Individual "A". TREJO replied that Vasquez GUERRERO did not know about the agreement between Individual "A" and RODRIGUEZ. Cellular telephone contact was again made between Individual "A" and RODRIGUEZ. Individual "A" explained to RODRIGUEZ that Vasquez GUERRERO was expecting payment after the delivery of the narcotics. RODRIGUEZ instructed Individual "A" not to worry about Vasquez GUERRERO and assured Individual "A" that Vasquez GUERRERO would get paid. RODRIGUEZ stated that he would be arriving the following day (February 12, 2021) to collect the money from Individual "A".

On February 12, 2021, Individual "A" contacted RODRIGUEZ by cellular telephone and was informed by RODRIGUEZ to drive to the parking lot at the Academy Sports store in McAllen, TX. Individual "A" arrived at the location and contacted RODRIGUEZ via telephone and advised RODRIGUEZ that he was already in the parking lot. RODRIGUEZ was paid $10,000 in United States currency (USD) by Individual "A".